1  ANDREW P. THOMAS
   MARICOPA COUNTY ATTORNEY
2
   By:     LAURENCE G. TINSLEY, JR.
3          State Bar No. 012581
           Deputy County Attorney
4          MCAO Firm No. 00032000
           ca-civilmailbox@mcao.maricopa.gov
5
   CIVIL DIVISION
6  Security Center Building
   222 North Central Avenue, Suite 1100
7  Phoenix, Arizona 85004-2206
   Telephone (602) 506-8541
8
   Attorney for J.C. Nelson
9
                IN THE UNITED STATES DISTRICT COURT
10
                   FOR THE DISTRICT OF ARIZONA
11

12  Jimmy Williams,                      NO. CV08-0742 SRB(LOA)

13              Plaintiff,

14  v.                                   **DEFENDANT NELSON'S
                                         MOTION FOR SUMMARY
    J.C. Nelson,                         JUDGMENT**
15
                Defendant.
16

17
          Plaintiff has brought an excessive force claim under 42 U.S.C. § 1983 and the
18
    Prisoner Litigation Reform Act ("PLRA").  Defendant Jim Nelson moves for summary
19
    judgment because the Court can find that Nelson did not use excessive force as a matter
20
    of law as demonstrated by the video-recording of these events.  Further, Plaintiff cannot
21
    prove one of the critical elements of his claim, that the back pain he allegedly currently
22
                                       1

1    suffers was caused by this event.   Finally, the Plaintiff's failure to properly exhaust his

2    administrative remedies bars his claim as a matter of law.

3    **I.      Factual background.**

4          Plaintiff claims that Officer Nelson used excessive force against him, and thus

5    violated his Fourteenth Amendment rights.  Complaint, ¶ 3.  He alleges that on October

6    2, 2007, he was shackled and handcuffed to another inmate when Nelson gave him a

7    direct order, became aggressive "for no apparent reason," and shoved Plaintiff in the

8    back "with unnecessary force."[1]   Id.   He states he turned to confront Nelson who

9    grabbed him by the shoulders, entwined his hand in Plaintiff's shirt and "repeatedly jerk

10   me [Plaintiff] back and forth with enough force to injure" him.  Id.  Plaintiff claims four

11   million dollars in compensatory and punitive damages.  Complaint at p. 6.

12         The video-recording (See S.O.F. # 1) of the incident demonstrates Plaintiff's

13   claims are greatly exaggerated.  The entire event lasts approximately 120 seconds, from

14   5:59:57 to 6:01:02.   Id.   Most of the events happen instantaneously.   The video-

15   recording first shows an elevator at the Fourth Avenue Jail that begins to fill up

16   (beginning at 5:59:33) with approximately 25 inmates who all face forward (toward the

17   back of the elevator).  S.O.F. # 3.

18         The video shows the Plaintiff, a large bald man entering the elevator at 5:59:57,

19   toward the end of the crowd of inmates that boards it.  S.O.F. # 4.  He appears to lean

20   against the wall on the left side of the elevator door at 6:00:04 hours.   S.O.F. # 5.

21   _____

22   [1] At his deposition, the Plaintiff could not or would not answer what he meant by
     "unnecessary force," suggesting that Plaintiff could not meet his burden.  (S.O.F. # 37)

2

1  Defendant Nelson then enters the elevator at 6:00:13-15, to Plaintiff's left side.  S.O.F. #

2  6.  Prior to anyone entering, Nelson had told the inmates they must move all the way to

3  the back of the elevator.  S.O.F. # 2.  The video-recording shows that when Nelson

4  enters, he motions with his right hand for Plaintiff to move forward, at 6:00:20-21.

5  S.O.F. # 7.

6     Plaintiff either does not see this signal or ignores it, so Nelson directs him with

7  his hand again at 6:00:24. S.O.F. # 8.   Plaintiff slowly moves forward at 6:00:27.

8  S.O.F. # 9.  Nelson then physically nudges Plaintiff forward some more. S.O.F. # 10.

9  He told Plaintiff "You need to move up" (S.O.F. # 11), and Plaintiff turns around to face

10  Nelson at 6:00:29.  S.O.F. # 12.  Plaintiff admitted that he said to Nelson, "Hey Man,

11  what the hell are you doing?" (S.O.F. # 14), and admitted that this could be perceived as

12  an aggressive statement. S.O.F. # 15.  The Plaintiff also stated "there's not enough

13  room."  S.O.F. # 13.  As they exchange words, approximately 14 of the approximate 25

14  inmates begin to stare at the exchange.  S.O.F. # 16.

15     At 6:00:42, Nelson moves Plaintiff forward with his hands, so Plaintiff's right

16  shoulder faces forward.  S.O.F. # 17.   At 6:00:45, the Plaintiff turns again to face

17  Nelson.  S.O.F. # 18.  Plaintiff admitted that he cursed at Nelson at this point.  S.O.F. #

18  19.  At 6:00:46-47, Nelson uses both his hands to direct Plaintiff forward.  S.O.F. # 20.

19  The Plaintiff appears to continue to physically resist this direction by stiffening his upper

20  body at 6:00:48-49.  S.O.F. # 25.  In the next second, at 6:00:50, Nelson physically

21  moves Plaintiff's left shoulder toward the back of the elevator, facing him forward with

22  both hands.  S.O.F. # 26.  Plaintiff's head visibly bobs back and forth slightly at

3

1   6:00:52.[2]  S.O.F. # 27.  At this point, another inmate states, "Yeh, there *are* lots of

2   persons in here."  S.O.F. # 29.

3       Then, a second later, at 6:00:53-54, another officer directs that Plaintiff be taken

4   off the elevator.  S.O.F. # 30.  Plaintiff walks off elevator on his own power, while

5   Nelson stays on the elevator watching him walk off, at 6:00:58.  S.O.F. # 31.

6       That is the entire interaction between the Plaintiff and Nelson.  This is not a case

7   of beating, kicking, hobbling, tackling, etc.  S.O.F. # 32.  Nelson used no weapons.

8   S.O.F. # 33.  Plaintiff admits he was never taken to the ground.   S.O.F. # 34.

9       Plaintiff claims he was physically injured and suffered pain, including shoulder,

10  neck and unspecified back pain as a result of this brief interaction.   S.O.F. # 39.

11  However, while Plaintiff claims he continues to suffer back pain more than a year later,

12  he admits he has no evidence to connect his claim of back pain to these events.  S.O.F. #

13  40.  He admitted that he has no medical testimony or expert who would relate his alleged

14  pain to these events.  S.O.F. # 41.  He admitted he's unaware of any doctor from the jail

15  who would relate his back pain to these events.   S.O.F. # 42.  He admitted he can

16  produce no doctor to say this would be a life-long injury.   S.O.F. # 43.   At his

17  deposition, Plaintiff could not or would not provide any information on the amount,

18  quality or frequency of pain.  S.O.F.  # 44.  He could not state what type of back injury,

19  if any, he sustained.  S.O.F. # 45.

20

21

22  ―――――――――――――
[2] Plaintiff described his head moving back and forth "violently" at his deposition.  S.O.F.
# 28.

4

1    **II.    Defendant Nelson used no excessive force as matter of law.**

2           The courts analyze claims of excessive force under the Fourth Amendment under

3    the objective reasonableness standard stated in *Graham v. Connor*, 490 U.S. 386, 109

4    S.Ct 1865 (1989).    The Fourth Amendment applies to claims brought by pretrial

5    detainees, such as the Plaintiff.  *Lolli v. County of Orange*, 351 F.3d 410, 415 (9th Cir.

6    2003).   The analysis is objective:   the Court must determine whether the Officer's

7    actions were objectively reasonable in light of the facts and circumstances confronting

8    the Officer.   The Fourth Amendment does not prohibit the use of reasonable force.

9    *Tatum v. City and County of San Francisco*, 411 F.3d 1090 (9th Cir. 2006).   As

10   recognized in *Graham*,

11          [n]ot every push or shove, even if may later seem unnecessary in the peace of a
            judge's chambers, violates the Fourth Amendment.  Id., 490 U.S. 386, 109 S.Ct
12          1865, 1872.

13   This language is especially applicable because this case *does* involve minor pushes and

14   shoves, none of which were unnecessary or unreasonable.

15          To defeat summary judgment, the Plaintiff must show that a reasonable jury

16   could find Nelson's use of force was excessive.[3]  The Plaintiff cannot do so in this case.

17   The use of force was objectively reasonable under the circumstances.  The video (S.O.F.

18   # 1) unequivocally resolves every issue of fact in favor of Nelson, and the Court can

19   _____

20          [3]  While summary judgment in excessive force cases should be "granted sparingly,"
     *Smith v. City of Hemet*, 394 F.3d 689, 701 (9th Cir. 2005), the record overwhelmingly
     demonstrates that no excessive force occurred as a matter of law.  On the record before
21   the Court, no rational trier of fact could find for Plaintiff, and thus no genuine issue of
     material fact exists.  *See Matsushita Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574,
22   106 S.Ct 1348, 1356 (1986)

1  resolve this case as a matter of law.  *See Scott v. Harris,* 550 U.S. 372, 127 S.Ct 1769,

2  1776 (2007) (if the non-moving party's version of events is discredited by the

3  videotaped record so that no reasonable jury could believe him, a court should not adopt

4  the non-moving party's version of facts merely for purposes of ruling on a summary

5  judgment motion.)[4]

6  The video shows that Nelson didn't use excessive force as matter of law.  He

7  didn't hit, kick, or tackle Plaintiff; he didn't use a weapon against the Plaintiff; he didn't

8  break any of Plaintiff's bones.  Rather, Plaintiff failed to move when Nelson told him to.

9  When he argued, Nelson nudged him forward.  Nelson eventually physically moved him

10  with his hands to face forward with reasonable force.  Plaintiff soon walked off the

11  elevator under his own power with no sign of injury.  Nelson acted reasonably under the

12  circumstances.

13  The recent case of *Dunn v. Matatall*, 549 F.3d 348 (6th Cir. 2008), demonstrates

14  that Nelson's use of force was objectively reasonable.  In *Dunn*, a case where the events

15  were also videotaped, the court held that officers did not use excessive force as a matter

16  of law after they physically removed the plaintiff from his vehicle and in the process

17  *broke his leg*, after the plaintiff led them on a high speed car chase.  The plaintiff

18  suffered a significant fracture which apparently caused his femur bone to stick out of his

19  leg.  Id., at 351.  He later required surgery and physical therapy, and claimed his injury

21  [4] Under *Scott*, while the Plaintiff's testimony in some instances contradicts the video
22  recording, this does not create a question of fact since *Scott* teaches that the video alone
can be deemed the final arbiter.

1   left him disabled.  The Court relied on a video-recording to reach its holding.

2   In *Dunn*, the District Court held that as matter of law the Officers didn't act in a

3   way that was objectively unreasonable.  Since the Court found no violation of Plaintiff's

4   constitutional rights occurred, it didn't reach the issue of whether the officers enjoyed

5   qualified immunity (Id. at 352) – the same analysis this Court can and should use.

6   On appeal, the court considered whether the facts showed that injury-causing

7   conduct violated Plaintiff's constitutional rights.  The court noted if there was no

8   constitutional violation, then the Plaintiff's § 1983 claim failed as matter of law,

9   entitling defendants to summary judgment, and relieving them of the need for qualified

10   immunity.

11   The court noted that the Supreme Court in *Scott v. Harris*, *supra*, instructed that it

12   must determine "if facts depicted on video, taken in light most favorable to Dunn show

13   that officer's conduct was objectively reasonable."  Id., at 353.  The court applied the

14   "objective-reasonableness standard," which it noted "depends on the facts and

15   circumstances of each case viewed from the perspective of a reasonable officer on the

16   scene and not with 20/20 hindsight."  Id.  The court recognized that officers must make

17   split-second decisions in tense, uncertain circumstances.  Applying the factors

18   articulated in *Graham* -- i.e., the severity of crime at issue, whether the suspect posed an

19   immediate threat, and whether the suspect actively was resisting or evading – the court

20   found that no excessive force occurred as a matter of law to cause Plaintiff's significant

21   injuries.  The court concluded that the "video shows that the Officers acted reasonably in

22   attempting to neutralize a perceived threat by physically removing Dunn from his

7

1    vehicle." Id., at 354.

2         Likewise, in this case, the video shows that Nelson, one of two detention officers

3    in an elevator full of some 25 pretrial detainees, acted reasonably to neutralize a

4    potential threat occasioned by the inmate Plaintiff's failure to obey orders.   Nelson

5    reasonably grabbed and officers had removed Plaintiff from the elevator once he resisted

6    Nelson's direction and started arguing with Nelson in front of everyone.[5]   At least one

7    inmate responded to this argument.

8         As to *Graham's* severity factor, the court noted that Dunn had committed more

9    than a mere traffic offense.  He had exceeded the speed limit, evaded the police, and ran

10   multiple traffic signals in residential neighborhoods.  Similarly, in our case, Plaintiff's

11   failure to obey an order from a Detention Officer violated the Jail Rules, and disrupted

12   the order of the jail, (S.O.F. # 21, 22), all in an elevator crowded with inmates, who

13   could present a potential danger to officers like Nelson.  S.O.F. # 24.

14        Regarding *Graham's* next factor, i.e., threat to officer safety, the court in *Dunn*

15   held the officers could not know the threat Dunn posed, given his immediate prior

16   history of evading the officers, driving recklessly, and appearing recalcitrant to their

17   orders.  Similarly, here, Plaintiff disobeyed Officer Nelson's orders in a closed space

18   occupied by many inmates, then argued with him, while the rest of the inmates watched

19   _____

20   [5] As shown by the severe injury cases that considered whether questions of material fact
     existed on whether officers truly used excessive force (cited below), while this is

21   certainly not so significant a case as other cases that go to the jury, the Court must still
     consider its relatively innocuous facts (i.e., no beating, kicking, hobbling, tackling, etc.),

22   and the allegations made, in light of these factors.

these events intently – as shown on the video.  One other inmate responded by also telling Nelson there were a lot of people in there, suggesting he was starting to support Plaintiff's claim that there was not enough room.  S.O.F. # 29.  Nelson could reasonably believe a potential threat existed if Plaintiff began to incite the crowd, so he acted quickly to keep order, first by physically redirecting him, and then by assisting in his removal.[6]   His actions promoted a legitimate penological purpose, to promote discipline and obedience in the jail.  *Cf., Pratt v. Rowland* 65 F.3d 802, 806 (9th Cir. 1995), citing *Sandin v. Conner*, 515 U.S. 472, 115 S.Ct. 2293 (1995).  Indeed, Plaintiff admits that Nelson had a right to keep order in the jail (S.O.F. # 35), and admitted an officer has the right to use reasonable force (S.O.F. # 36), though he later claimed he didn't know what this meant.  Id.

Regarding *Graham's* level of resistance factor, the court noted that Dunn resisted arrest by failing to stop for approximately two minutes.  He then struggled with the officers after they approached him until he was injured.  Similarly, here, the video and affidavit demonstrate that Plaintiff disobeyed Nelson's orders, resisted his physical direction, exchanged words with him, and ultimately had to be led off of the elevator.

Finding in favor of the Officers, the court in *Dunn* held that:

> Officers may use only an amount of force that is objectively reasonable under the circumstances, and there is no indication that the Officers did anything other than just that.  Id., at 355.

The court noted that not every push or shove, even if it may later seem unnecessary in

---

[6] Plaintiff, who admitted he was a former bouncer, refused to answer whether crowds of people could present a danger to a single individual.  S.O.F. # 38.

9

1    the peace of a judge's chambers, violates the Fourth Amendment.  Id., citing *Graham,*

2    *supra*.   The court also held "because we cannot say that the Officers' conduct was

3    objectively unreasonable under the circumstances, we do not reach the issue of whether

4    the officers would be entitled to qualified immunity."  Id.

5           Likewise, this Court can find that (1) no excessive force occurred as a matter of

6    law and (2) Officer Nelson acted reasonably.  Plaintiff disobeyed a direct order to move

7    forward, and the video shows that Nelson responded to Plaintiff's disobedience with a

8    mild amount of force – first, to move Plaintiff forward; second, to face him forward; and

9    third, to assent to Plaintiff being led off the elevator, all to maintain order in the jail

10   when Plaintiff resisted his direction and argued with him.

11          Plaintiff's claim of excessive force fails as a matter of law.   It simply does not

12   rise to the level that courts require before determining whether the case goes to a jury.

13   In *Scott, supra*, for example, the police officer rammed Plaintiff's car during a high

14   speed chase, injuring Plaintiff and rendering him a quadriplegic.  The Court found the

15   video showed the officer's admittedly dangerous actions were objectively reasonable.

16   The Court recognized that the mere existence of some alleged factual dispute between

17   the parties will not defeat an otherwise properly supported summary judgment.  550 U.S.

18   372, 127 S.Ct 1769, 1776.  Under *Scott*, if ramming a car and causing quadriplegia is not

19   excessive force, Nelson's nudging and physically moving Plaintiff cannot be excessive

20   here.  As in *Scott*, this Court should rely on the video and determine that no reasonable

21   jury could find that Nelson used any excessive force whatsoever.

22          As the Ninth Circuit has observed, "we have held more aggressive police conduct

10

1    than [the Officer's conduct to be] objectively reasonable, even where the conduct

2    resulted in serious physical injury." *Tatum v. City and County of San Francisco*, 411

3    F.3d 1090, 1097 (9th Cir. 2006).   There, the decedent died after an officer forced

4    decedent's arm behind his back, positioned him against a wall, and used a bar arm

5    control to force him to the ground after the decedent struggled, and then cuffed him

6    while he was on the ground.   Though decedent died, the Court found no excessive force

7    had occurred. *See also Jackson v. City of Bremerton*, 268 F.3d 646, 653 (9th Cir. 2001)

8    (even where plaintiff suffered a broken finger, irritated eyes, and permanent injuries, the

9    District Court properly granted summary judgment to the officers, finding they used no

10   excessive force as a matter of law); *Johnson v. County of Los Angeles*, 340 F.3d 787 (9th

11   Cir. 2003) (reversing summary judgment, the Ninth Circuit found that the deputy's use

12   of force in pulling and twisting to remove a suspect from a chased getaway car was

13   objectively reasonable though Plaintiff asserted the officer's conduct render him a

14   paraplegic).

15          Further, the record demonstrates that Plaintiff's claim is only one for a "minimal

16   intrusion," which doesn't rise to the level of force that should go to the jury. *See Lolli v.*

17   *County of Orange*, 351 F.3d 410, 417 (9th Cir. 2003).   The court found that "the alleged

18   intrusion on the Plaintiff's Fourth Amendment interests, gauged by the type and amount

19   of force inflicted" – including allegations of being grabbed, kicked, hit with batons,

20   twisted of limbs, knuckled of ears, and pepper sprayed, resulting in broken ribs,

21   perforated ear drums, bruises, and lacerations -- "was substantial."   It thus reversed

22   summary judgment for the officers because the intrusion was *not* minimal. *Id.  Lolli* and

1    other cases illustrate the types of cases that go to the jury with claims of excessive force.

2    *See e.g., Forrester v. City of San Diego,* 25 F.3d 804, 807 (9th Cir.1994) (concluding

3    that ample evidence supported a jury's verdict in favor of officers that the use of "pain

4    compliance techniques" to remove demonstrators was objectively reasonable where

5    officers used two sticks of wood connected at one end by a cord to grip a demonstrator's

6    wrist, and used wrist-and arm-twisting, and pressure point holds which caused injuries to

7    hands and arms, including bruises, a pinched nerve, and a broken wrist).  These cases,

8    involving death and serious physical injury, each demonstrate the type of facts required

9    to have a jury adjudicate an excessive force claim.

10        Since Plaintiff's claim involves such a minimal intrusion (nudging and pushing

11   with hands), and since Officer Nelson used no excessive force as a matter of law, this

12   Court should grant summary judgment.

13   **III.     The Plaintiff cannot prove causation.**

14        Even if Plaintiff could prove a constitutional violation, he cannot show that this

15   violation caused any injury.  A plaintiff must prove a link between the claimed violation

16   and injury to recover damages in a § 1983 action.  *Coral Construction v. King County,*

17   941 F.2d 91, 927 (9th Cir. 1991).  While Plaintiff has alleged he has suffered pain which

18   continued more than a year after the October 2, 2007 events, he hasn't provided any

19   admissible evidence to show he received a physical injury.  He admits he has no medical

20   testimony or expert to support his claims that his alleged pain is related to these events.

21   S.O.F. # 41.

22        Under the PLRA, "no federal civil action may be brought by a prisoner confined

1   in a jail, prison, or other correctional facility, for mental or emotional injury suffered

2   while in custody without a prior showing of physical injury."  U.S.C. § 1997e(e).  This

3   provision requires a prior showing of a physical injury.  Here, Plaintiff admits he has no

4   proof that he suffered *any* injury by the alleged events, and thus cannot meet the PLRA's

5   requirements.  This bars Plaintiff's damages claims.

6   **IV.      The Plaintiff failed to properly exhaust his administrative remedies.**

7          The Plaintiff failed to properly exhaust his administrative remedies.  The Court

8   will recall that Defendants filed a prior motion to dismiss on the issue of Plaintiff's

9   failure to exhaust his administrative remedies.[7]

10          MCSO Policy DJ-3 (S.O.F. # 46) concerning the inmate grievance procedure of

11   the MCSO contains many safeguards that allow inmates to move their grievances up

12   each subsequent level if they do not receive a response within a set timeframe.

13          For example, if an inmate doesn't receive a response from the detention officer

14   within four days, the inmate may submit a grievance form directly to the shift

15   supervisor.  S.O.F. # 46.  If the shift supervisor doesn't provide a response within seven

16   more days, the inmate may submit a grievance form directly to the hearing officer.  Id.

17   The policy specifically advises that if an inmate doesn't receive a response from the

18   hearing officer after 11 more days or if he or she feels the problem hasn't resolved, then

19   he or she may proceed ahead to the fourth level by filing an Institutional Grievance

---

20

21

22

[7] In response to the motion to dismiss, when Plaintiff produced a copy of a grievance document he said he had filed, Defendant withdrew the motion to conduct a further investigation.  That investigation reveals that Plaintiff failed to properly exhaust his administrative remedies, after he allegedly filed a grievance in this matter.

13

1    Appeal with the jail commander.  Id. If the jail commander doesn't respond within seven

2    more days, then the inmate may proceed to the last step by filing an External Grievance

3    Appeal.  Id.

4           MCSO provides every inmate with a copy of the grievance procedures in the

5    rules and regulations at the time the inmate is booked.  S.O.F. #  23.

6           In this case, at his deposition, the Plaintiff admitted he wrote and submitted a

7    grievance regarding these events on October 2, 2007.  S.O.F. # 47.  However, when he

8    did not receive a response, he waited *until November 29, 2007* to request an answer.

9    S.O.F. # 48.  He admitted he wrote no other grievance for this incident between October

10   2 and November 29, 2007.  S.O.F. # 49.

11          Plaintiff's failure to properly grieve this issue is fatal to his Complaint.   The

12   Prison Litigation Reform Act of 1996 ("PLRA"), 42 U.S.C. § 1997e, provides:

13          No action shall be brought with respect to prison conditions under Section 1983
            of this title, or any other Federal law, by a prisoner confined in any jail, prison, or
14          other correctional facility until such administrative remedies as are available are
            exhausted.
15

16   Further, to exhaust administrative remedies, an inmate must pursue all levels of the

17   Maricopa County Sheriff's Office administrative procedure.   *Morgan v. Maricopa*

     *County*, 976 F.Supp. 985, 995 (D. Ariz. 2003).

18          The PLRA's exhaustion requirement applies to *all* inmate suits about prison life,

19   whether they involve general circumstances or particular episodes. *Porter v. Nussle*, 534

20   U.S. 516 (2002).  The exhaustion provisions of 42 U.S.C. § 1997e are mandatory.  *Booth*

21

22

1    *v. Churner*, 532 U.S. 731 (2001).  Where Congress specifically mandates exhaustion, the

2    courts cannot waive the exhaustion requirements.  *Id*.  The general purpose of requiring

3    inmate litigants to pursue administrative remedies is to provide notice to the appropriate

4    official who can remedy the problem short of court intervention.

5         In *Woodford v. Ngo*, 126 S.Ct. 2378, 548 U.S. 81 (2006), the Supreme Court held

6    that *proper* exhaustion of administrative remedies is necessary.  The Court determined

7    that a contrary holding would make the PLRA's exhaustion scheme "wholly ineffective"

8    since the benefits of exhaustion can only be realized if the prison grievance system is

9    given a "fair opportunity to consider the grievance."  126 S.Ct. 2378, 2388.

10        Plaintiff never properly grieved the issue now before the Court, so he cannot

11   prevail as a matter of law.  As *Woodford* recognized, the initiation of this lawsuit

12   thwarted the purpose of the PLRA, since MCSO never had the opportunity to address

13   the central issue in this suit.  Plaintiff should not be allowed to ask for damages in this

14   matter since MCSO and Nelson could not address this claim.

15                              **Conclusion**

16        This is not a case where the Court needs to reach the issue of qualified immunity.

17   Rather, since no reasonable jury could find that Nelson used excessive force, the Court

18   can make that finding as a matter of law.  Plaintiff has presented no evidence that Nelson

19   used excessive force, that Nelson acted unreasonably, or that Plaintiff became injured.

20   Further, since Plaintiff failed to properly exhaust the administrative remedies available

21   to him, the Court should grant Defendants' Motion for Summary Judgment.

22

1

RESPECTFULLY SUBMITTED this 17TH day of APRIL 2009.

2

ANDREW P. THOMAS
MARICOPA COUNTY ATTORNEY

3

4

BY:  S/Laurence G. Tinsley, Jr.,

5

Laurence G. Tinsley, Jr.
Deputy County Attorney

6

Attorney for Defendant  J.C. Nelson

7

ORIGINAL of the foregoing E-FILED

8

and copy HAND-DELIVERED **or**
**copy MAILED this**

9

17th  day of APRIL 2009 to:

10

Honorable Susan R. Bolton
UNITED STATES DISTRICT COURT

11

Sandra Day O'Connor U.S. Courthouse, Suite 522
401 W. Washington Street, SPC 50

12

Phoenix, AZ  85003-7570

13

Honorable Lawrence O. Anderson
United States District Court

14

Sandra Day O'Connor U.S. Courthouse, Suite 322
401 W. Washington Street, SPC 11

15

Phoenix, Arizona  85003-2120

16

and COPY mailed to:

17

Jimmy Williams #167661
ASPC – Tucson – Cimarron

18

P.O. Box 24400 1D15
10,106 S. Wilmot Rd.

19

Tucson, Arizona  85734
*Plaintiff Pro Se*

20

       s/Grace Naranjo

21

22

S:\COUNSEL\Civil\Matters\CJ\2008\Williams CJ08-0133\Pleadings\MSJ.doc

16